IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **THERESA MARY DOTZEL,** | : | Civil No. 1:12-CV-1281 |
| | : | |
| **Plaintiff,** | : | |
| | : | |
| v. | : | |
| | : | **(Magistrate Judge Carlson)** |
| **MICHAEL ASTRUE,** | : | |
| **COMMISSIONER OF** | : | |
| **SOCIAL SECURITY** | : | |
| | : | |
| **Defendant.** | : | |

# MEMORANDUM OPINION

## I.  Introduction

In this case we are called upon to assess the adequacy of an Administrative Law Judge's (ALJ) opinion that the Plaintiff was not fully disabled. That opinion was reached against a factual backdrop in which significant evidence, including diagnostic treatment results and the Plaintiff's own description of her level of physical activity, undermined her claim of total disability. Because we find that the ALJ also appropriately considered and assessed this evidence and reached a decision that was supported by substantial medical evidence, the ALJ's decision will be affirmed.

## II.     Statement of Facts and of the Case

On April 6, 2009, Theresa Dotzel, applied for social security disability benefits, alleging that she became disabled on January 1, 2009, the day after she was fired from her clerical-reception position at an animal hospital. (Tr. 161.) At the time of her application, Dotzel was 52 years old, (Tr. 139-40.); had a high school diploma and attended regular education classes (Tr. 166.); had worked for a number of years as a veterinary clinic receptionist (Tr. 31, 162.); and also had past work experience in accounting for a department store, customer service, and clerking at a deli. (Tr. 168.)

In her disability application Dotzel stated that she was totally disabled due to "back/neck problems, diabetes, high blood pressure, rapid heartbeat, seizure, migraines, depression, anxiety, high cholesterol." (Tr. 161.) However, the medical evidence presented by Dotzel in support of this application provided a mixed and equivocal picture regarding both her mental health and her physical ailments.

Thus, with respect to any mental or emotional impairments claimed by Dotzel, the claimant acknowledged that she had never seen a psychologist or a psychiatrist (Tr. 507), and her reported lifestyle and social activities belied any claim of disabling mental impairment. For example, Dotzel stated that she visited daily with a neighbor after lunch, (Tr. 54.), socialized with neighbors and friends regularly (Tr. 191.), and had no problems getting along with others. (Tr. 192.) Dotzel also denied

experiencing severe stress related disability insisting that she handled stress "fine," got along with authority figures "fine," and "love[d] it" when she experienced changes in routine. (Tr. 193.) Given Dotzel's description of her mental, social and psychologoical functioning, a state agency psychologist concluded that her activities of daily living were "not limited at all by any mental issue" and that there was no evidence of significant disabling mental health symptoms or mental health diagnoses. (Tr. 503.)

Likewise, the medical evidence presented a mixed, equivocal and contradictory picture concerning Dotzel's physical condition. For example, the Plaintiff's primary treating physician cited her diabetes as a potentially limiting medical condition, (Tr. 516.), but the evidence showed that Dotzel had subsequently initiated more regular exercise, (Tr. 282.), and by the time of the hearing, was walking a mile daily. (Tr. 53.) Further, there was no record of hospitalizations or visits to the emergency room related to Plaintiff's diabetes during the disability period. (Tr. 50.) Indeed, notably, in this appeal Dotzel does not contend that the ALJ erred in rejecting this treating physician opinion regarding the severity of her diabetes. (Doc. 8.)

Similarly, the evidence relating to Dotzel's orthopedic condition was equivocal and contradictory, and in many instances supported the ALJ's finding that Dotzel was not disabled. At the time that she applied for benefits, Dotzel had a history of prior

surgeries on her back and neck. (Tr. 401.) However, the medical evidence revealed that Dotzel typically had recovered well from these procedures. For example, in August 2007, after back surgery, Dotzel's orthopedic surgeon K. Nicholas Pandelidis, M.D., cleared her to return to work at "full duty." (Tr. 782.) Dotzel later underwent an arthroscopic rotator cuff repair procedure in September 2009, (Tr. 451.), and initiated a successful course of physical therapy. In fact, within a month of the surgery, Plaintiff reported that her pain level was diminished to a "2" or a "3" on a scale of 1 to 10. (Tr. 484, 485, 486.) Physical therapy notes from the end of October 2009 likewise state that Dotzel was "showing nice progress towards [her] goals" (Tr. 633.) By December 2009, Dotzel was reporting pain diminished to only a "2" on a scale of 1 to 10. (Tr. 692-93) Thus, when state agency physician Candelaria Legaspi, M.D., reviewed the medical record in December 2009, she noted that Dotzel's pain complaints recently had been minimal, that her functional range of motion was improving, and that her walking and daily activities were successful. (Tr. 513-14.) In short, Dr. Legaspi explained, the "record reveals that the treatment has generally been successful in controlling [Plaintiff's] symptoms." (Tr. 514.)

Dotzel continued to experience significant improvement in her physical condition in 2010. By January 2010, Plaintiff was reporting that her pain was a "0" on a scale of 1 to 10 (Tr. 687.), though she later indicated that her pain was increased

because her "neck [was] bugging" her. (Tr. 685.) An additional procedure was performed on Dotzel on January 30, 2010, to correct adhesions that formed post-operatively by manipulating Plaintiff's left shoulder while she was under anesthesia. (Tr. 555.) The follow-up procedure was also successful with Dotzel reporting in February 2010 that she had seen "improvement since the manipulation." (Tr. 766.) Plaintiff's range of motion, was "markedly improved," and her pain was "easing up" (Tr. 766.) Following this procedure, Dotzel described her pain as "0" at physical therapy sessions in early February 2010 and was "making steady gains" with increased range of motion and strength. (Tr. 676, 678.) In fact, Dotzel reported being able to shovel snow in brief intervals, (Tr. 675.) and on February 9, 2010, she described a pain level of "0." (Tr. 675.) When Dotzel attended therapy on February 15, 2010, she made no complaints of pain; (Tr. 673.), reported greater ease in carrying light groceries, carrying the laundry basket, reaching into high cabinets, and doing her hair. (Tr. 673.) She was "progressing well toward [her] goals," (Tr. 673.), and even continued to shovel snow despite some soreness in late February 2010. (Tr. 672.)

    **B.**     **ALJ Hearing and Decision**

It is against the backdrop of this equivocal medical and emotional history that the ALJ conducted a hearing on Dotzel's disability claim on December 9, 2010. (Tr.

25-75.) At this hearing ALJ heard from Dotzel and also took testimony from an vocational expert. (Id.)

Following this hearing, the ALJ issued an opinion on January 4, 2011, which denied Dotzel's application for benefits. (Tr. 11-20.) In this decision, the ALJ found on the basis of the mixed medical record that Dotzel had not shown that her ailments met any listed impairment under social security regulations, and further concluded that Dotzel retained the residual capacity to perform light work, including her past relevant work as a cashier-receptionist. (Id.) Dotzel administratively challenged this ALJ decision but the Appeals Council affirmed the judgment of the ALJ denying this application. This appeal followed. (Doc. 1.)

The parties have fully briefed this matter, (Docs. 8 and 9.), and this case is now ripe for resolution. On appeal, Dotzel raises three claims, arguing: (1) that the ALJ erred in concluding that at Step 3 of this analytical process that she did not meet the listed criteria for disability under listing 1.04; (2) contending that the ALJ erred in failing to make an explicit determination regarding the transferability of her skills; and (3) alleging that the ALJ's residual functional capacity finding in her case was erroneous.

For the reasons set forth below, we find that the ALJ's findings in this case were adequately supported and explained on the record. Therefore, this appeal will be denied.

### III. Discussion

#### A. Standards of Review–The Roles of the Administrative Law Judge and This Court

##### 1. Initial Burdens of Proof , Persuasion and Articulation for the ALJ

Resolution of the instant social security appeal involves an informed consideration of the respective roles of two adjudicators–the administrative law judge (ALJ) and this Court. At the outset, it is the responsibility of the ALJ in the first instance to determine whether a claimant has met the statutory prerequisites for entitlement to benefits. To receive disability benefits, a claimant must present evidence which demonstrates that the claimant has an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 432(d)(1)(A). Furthermore,

> [a]n individual shall be determined to be under a disability only if [her] physical or mental impairment or impairments are of such severity that [she] is not only unable to do [her] previous work but cannot,

considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which [she] lives, or whether a specific job vacancy exists for [her], or whether [she] would be hired if [she] applied for work. For purposes of the preceding sentence (with respect to any individual), "work which exists in the national economy" means work which exists in significant numbers either in the region where such individual lives or in several regions of the country.

42 U.S.C. § 423(d)(2)(A).

In making this determination the ALJ employs a five-step evaluation process to determine if a person is eligible for disability benefits. See 20 C.F.R. § 404.1520. See also Plummer v. Apfel, 186 F.3d 422, 428 (3d Cir. 1999). If the ALJ finds that a Plaintiff is disabled or not disabled at any point in the sequence, review does not proceed any further. See 20 C.F.R. § 404.1520. As part of this analysis the ALJ must sequentially determine, first, whether the claimant is engaged in substantial gainful activity. If a claimant is not engaged in gainful activity, the ALJ must then determine at step two whether the claimant has a severe impairment. If a claimant fails to show that his impairments are "severe," he is ineligible for disability benefits. See Plummer v. Apfel, 186 F.3d 422, 428 (3d Cir. 1999). The Regulations provide that a "severe" impairment is an "impairment or combination of impairments which significantly limits your physical or mental ability to do basic work activities." 20 C.F.R. §404.1520.

8

With respect to this threshold showing of a severe impairment, the showing required by law has been aptly described in the following terms: "In order to meet the step two severity test, an impairment need only cause a slight abnormality that has no more than a minimal effect on the ability to do basic work activities. 20 C.F.R. §§ 404.1521, 416.921; S.S.R. 96-3p, 85-28. The Third Circuit Court of Appeals has held that the step two severity inquiry is a *'de minimus* screening device to dispose of groundless claims.' McCrea v. Comm. of Soc. Sec.,370 F.3d 357, 360 (3d Cir.2004); Newell v. Comm. of Soc. Sec., 347 F.3d 541, 546 (3d Cir.2003). 'Any doubt as to whether this showing has been made is to be resolved in favor of the applicant.' Id." Velazquez v. Astrue, No. 07-5343, 2008 WL 4589831, *3 (E.D. Pa., Oct. 15, 2008). Thus, "[t]he claimant's burden at step two is 'not an exacting one.' McCrea v. Comm'r of Soc. Sec., 370 F.3d 357, 360 (3d Cir.2004). This step should be 'rarely utilized' to deny benefits. Id. at 361. Rather,. . . [a]n individual should be denied benefits at step two only if the impairment he presents is a 'slight abnormality' that has 'no more than a minimal effect on [his] ability to work.' Id." Kinney v. Comm'r of Soc. Sec., 244 F. App'x 467, 469-70 (3d Cir. 2007). Accordingly, "[d]ue to this limited function, the Commissioner's determination to deny an applicant's request for benefits at step two should be reviewed with close scrutiny." McCrea v. Commissioner of Social Sec., 370 F.3d 357, 360 (3d Cir. 2004).

Once this threshold, *de minimus* showing is made, "[i]n step three, the ALJ must determine whether [a claimant's] impairment matches, or is equivalent to, one of the listed impairments. See Plummer, 186 F.3d at 428.  If the impairment is equivalent to a listed impairment, then [the claimant] is *per se* disabled and no further analysis is necessary. See id" Burnett v. Comm'r of Soc. Sec. Admin., 220 F.3d 112, 119 (3d Cir. 2000).  For muskoskeletal ailments under Listing 1.04, these listing criteria provide that " functional loss for purposes of these listings is defined as the inability to ambulate effectively on a sustained basis for any reason, including pain associated with the underlying musculoskeletal impairment, or the inability to perform fine and gross movements effectively on a sustained basis for any reason, including pain associated with the underlying musculoskeletal impairment.  The inability to ambulate effectively or the inability to perform fine and gross movements effectively must have lasted, or be expected to last, for at least 12 months." 20 C.F.R. § 404, app. 1. Dotzel, as the claimant, "bears the burden of presenting medical findings showing that her impairment meets or equals a listed impairment.  Burnett v. Commissioner, 220 F.3d 112, 120 n. 2 (3d Cir. 2000).  'For a claimant to show that his impairment matches a listing, it must meet *all* of the specified medical criteria.  An impairment that manifests only some of those criteria, no matter how severely, does not qualify.'  Sullivan v. Zebley, 493 U.S. 521, 530, 110 S.Ct. 885, 107 L.Ed.2d 967 (1990)." Hernandez v.

Comm'r of Soc. Sec., 198 F. App'x 230, 234 (3d Cir. 2006). This Step 3 analysis must also be accompanied by a discussion of the evidence which is sufficient to permit informed judicial review. Burnett v. Comm'r of Soc. Sec. Admin., 220 F.3d 112, 120 (3d Cir. 2000).

Finally at Steps 4 and 5, the ALJ must consider whether the claimant's impairment prevents the claimant from doing past relevant work; and whether the claimant's impairment prevents the claimant from doing any other work. See 20 C.F.R. § 404.1520. This disability determination involves shifting burdens of proof. The initial burden rests with the claimant to demonstrate that he is unable to engage in past relevant work. If the claimant satisfies this burden, then the Commissioner must show that jobs exist in the national economy that a person with the claimant's abilities, age, education, and work experience can perform. Mason v. Shalala, 994 F.2d 1058, 1064 (3d Cir. 1993). If the ALJ finds that a Plaintiff is disabled or not disabled at any point in the sequence, review does not proceed any further. See 20 C.F.R. § 404.1520.

The ALJ's disability determination must also meet certain basic procedural and substantive requisites. Most significant among these legal benchmarks is a requirement that the ALJ adequately explain the legal and factual basis for this disability determination. Thus, in order to facilitate review of the decision under the

Case 1:12-cv-01281-MCC   Document 14   Filed 04/22/14   Page 12 of 18

substantial evidence standard, the ALJ's decision must be accompanied by "a clear and satisfactory explication of the basis on which it rests." Cotter v. Harris, 642 F.2d 700, 704 (3d Cir. 1981). Conflicts in the evidence must be resolved and the ALJ must indicate which evidence was accepted, which evidence was rejected, and the reasons for rejecting certain evidence. Id. at 706-707. In addition, "[t]he ALJ must indicate in his decision which evidence he has rejected and which he is relying on as the basis for his finding." Schaudeck v. Com. of Soc. Sec., 181 F. 3d 429, 433 (3d Cir. 1999).

### 2. Judicial Review of ALJ Determinations–Standard of Review

Once the ALJ has made a disability determination, it is then the responsibility of this Court to independently review that finding. In undertaking this task, this Court applies a specific, well-settled and carefully articulated standard of review. In an action under 42 U.S.C. § 405(g) to review the decision of the Commissioner of Social Security denying Plaintiff's claim for disability benefits, Congress has specifically provided that the "findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive[.]" 42 U.S.C. § 405(g).

The "substantial evidence" standard of review prescribed by statute is a deferential standard of review. Jones v. Barnhart, 364 F.3d 501, 503 (3d Cir. 2004). When reviewing the denial of disability benefits, we must simply determine whether

the denial is supported by substantial evidence. Brown v. Bowen, 845 F.2d 1211, 1213 (3d Cir. 1988); see also Johnson v. Commissioner of Social Sec., 529 F.3d 198, 200 (3d Cir. 2008). Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Hartranft v. Apfel, 181 F.3d 358, 360 (3d Cir. 1999)." Johnson, 529 F.3d at 200. See also Pierce v. Underwood, 487 U.S. 552 (1988). It is less than a preponderance of the evidence but more than a mere scintilla of proof. Richardson v. Perales, 402 U.S. 389, 401 (1971). Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Plummer v. Apfel, 186 F.3d 422, 427 (3d Cir. 1999)(quoting Ventura v. Shalala, 55 F.3d 900, 901 (3d Cir. 1995).

A single piece of evidence is not substantial evidence if the ALJ ignores countervailing evidence or fails to resolve a conflict created by the evidence. Mason v. Shalala, 994 F.2d 1058, 1064 (3d Cir. 1993). However, in an adequately developed factual record, substantial evidence may be "something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent [the decision] from being supported by substantial evidence." Consolo v. Federal Maritime Comm'n, 383 U.S. 607, 620 (1966). Moreover, in conducting this review we are cautioned that "an ALJ's findings based

on the credibility of the applicant are to be accorded great weight and deference, particularly since an ALJ is charged with the duty of observing a witness's demeanor and credibility.' Walters v. Commissioner of Social Sec., 127 F.3d 525, 531 (6th Cir.1997); see also Casias v. Secretary of Health & Human Servs., 933 F.2d 799, 801 (10th Cir.1991) ('We defer to the ALJ as trier of fact, the individual optimally positioned to observe and assess witness credibility.')." Frazier v. Apfel, No. 99-715, 2000 WL 288246, *9 (E.D. Pa. March 7, 2000). Furthermore, in determining if the ALJ's decision is supported by substantial evidence the court may not parse the record but rather must scrutinize the record as a whole. Smith v. Califano, 637 F.2d 968, 970 (3d Cir. 1981).

> **B.    The ALJ's Decision Was Supported By Substantial Evidence and Will be Affirmed**

Judged against these legal guideposts, we find that the decision of the ALJ in this case should be affirmed. As we have noted, on appeal Dotzel raises three discrete claims, none of which in our judgment warrant remand.

First Dotzel argues that the ALJ erred in failing to find at Step 3 of this analytical process that she met the criteria for Listing 1.04. (Doc. 8.) As we have noted, as the claimant Dotzel "bears the burden of presenting medical findings showing that her impairment meets or equals a listed impairment. Burnett v.

Commissioner, 220 F.3d 112, 120 n. 2 (3d Cir. 2000). 'For a claimant to show that his impairment matches a listing, it must meet all of the specified medical criteria. An impairment that manifests only some of those criteria, no matter how severely, does not qualify.' Sullivan v. Zebley, 493 U.S. 521, 530, 110 S.Ct. 885, 107 L.Ed.2d 967 (1990)." Hernandez v. Comm'r of Soc. Sec., 198 F. App'x 230, 234 (3d Cir. 2006).

In this case, citing some evidence of an alleged nerve root compression, *one* of the criteria under Listing 1.04, Dotzel appears to argue that the ALJ erred in failing to conclude that she met *all* of the criteria for this listing. This argument fails, however, for several reasons. First, the June 8, 2010, MRI analysis upon which Dotzel relies (Tr. 765.) suggests but does not explicitly document a nerve root compression finding. More fundamentally, Listing 1.04(A) also requires medical evidence of a host of additional medical findings, including an inability to ambulate effectively and impairment of motor functions. All of these findings and criteria must be satisfied before a claimant can be declared disabled at Step 3. Yet, in this case the MRI upon which Dotzel relies to support her disability claim specifically documents *no* deficits in motor strength testing, (Tr. 765.), and the record is replete with evidence indicating that Dotzel retained significant motor function. Listing 1.04(A) also categorically requires medical evidence of sensory or reflex loss, evidence which was notably

15

lacking here. This failure of proof on all of the elements of Listing 1.04 was fatal to Dotzel's claim before the ALJ and remains fatal on appeal.

Dotzel also argues that the ALJ erred by failing to address the transferability of her skills in the vocational analysis, however, the ALJ found that Plaintiff remained capable of returning to her own past work at Step 4 of this disability analysis. (Tr. 18-19, 66-68.) Transferability of skills to other jobs has no relevance in such circumstances. See 20 C.F.R. §§ 404.1560(b), 404.1568. Instead, "[t]ransferability of work skill is [only] at issue when a claimant's impairment prevents the performance of past relevant work." Macarages v. Astrue, CIV09-1270D, 2010 WL 3749468 (W.D. Okla. Aug. 23, 2010) report and recommendation adopted, CIV 09-1270-D, 2010 WL 3749455 (W.D. Okla. Sept. 21, 2010). Moreover, a claimant like Dotzel who challenges a Step-4 determination by an ALJ "bears the ultimate burden of establishing step . . . Four, she must show that she *cannot* return to her prior job. See Ramirez, 372 F.3d at 550. Where, as here, substantial evidence supports the ALJ's RFC determination, a claimant challenging her Step–Four determination must demonstrate that her RFC is inconsistent with the demands of her prior work. See Newell v. Commissioner of Social Security, 347 F.3d 541, 546 (3rd Cir.2003)." Salles v. Comm'r of Soc. Sec., 229 F. App'x 140, 149 (3d Cir. 2007). In this case, a review of the record considered as a whole reveals that Dotzel has not met this ultimate

burden of proof and persuasion that she cannot return to her past work. Therefore, Dotzel cannot gain a remand of this case by simply complaining that she did not receive a transferability-of-skills analysis which was unnecessary at Step 4.

Finally, Dotzel complains that the ALJ erred in making a residual functional capacity assessment in this case. This contention is also unavailing since the factual record, which the ALJ adequately addressed, was highly equivocal and contained substantial evidence which was relied upon by the ALJ and fully supported the ALJ's determination that Dotzel retained the capacity to perform light work, including past relevant work as a receptionist and cashier. Since the ALJ's decision adequately addressed this conflicting and equivocal medical evidence, the medical evidence cited by Dotzel does not suggest that the ALJ's ultimate conclusion was unsupported by substantial evidence, and there is no legal requirement that the ALJ discuss "every tidbit of evidence included in the record." Hur v. Barnhart, 94 F. App'x 130, 133 (3d Cir. 2004), this argument does not provide grounds for setting aside the ALJ's judgment when we scrutinize the record as a whole. Smith v. Califano, 637 F.2d 968, 970 (3d Cir. 1981).

### IV. Conclusion

For the foregoing reasons, the decision of the Commissioner will be affirmed. An appropriate order will issue.

So ordered this 22d day of April, 2014.

***S/Martin C. Carlson***
Martin C. Carlson
United States Magistrate Judge
